UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
YURIY MIRGORODSKIY,

                Plaintiff,

      -against-                               **COMPLAINT**
                                                      **AND JURY DEMAND**

RICHARD OSIASHVILI,

                Defendant.
------------------------------------------------------------------------x

       Plaintiff Yuriy Mirgorodskiy (hereinafter "Plaintiff"), for his complaint against defendant Richard Osiashvili ("Defendant"), by and through his undersigned counsel, alleges as follows:

**INTRODUCTION**

       1.     Plaintiff brings this action asserting claims against Defendant for: (i) malicious and intentional defamation of Plaintiff; and (ii) tortious interference with Plaintiff's business relations.

       2.     Prior to the Defendant's malicious defamation of Plaintiff as detailed below, Plaintiff enjoyed a longstanding career in owning and operating automobile dealerships without blemish. After teaching Defendant the automobile dealership business and becoming equity partners with Plaintiff, Defendant embarked on a defamation campaign by approaching numerous well-known individuals in the industry and falsely told those individuals that Plaintiff regularly engages in felonious conduct – commercial bribing in violation of New York Penal Law Section 180.08.

       3.     As a direct and proximate result of Defendant's intentional and malicious defamation campaign and his tortious interference with Plaintiff's business relations, Defendant has injured Plaintiff's reputation, and his ability to earn a living. Accordingly, this action seeks

1

damages and other relief against Defendant for his intentional and malicious destruction of Plaintiff's reputation.

## PARTIES

4. Plaintiff is an individual who is a citizen of the United States and resides in the State of New York at the following address: 85-89 67th Avenue, Rego Park, New York 11374.

5. Defendant Richard Osiashvili resides in the State of New Jersey at the following address: 2 Lambs Lane, Cresskill, New Jersey 07626.

## FEDERAL SUBJECT MATTER JURISDICTION AND VENUE

6. This Court has federal subject matter jurisdiction over this action pursuant to diversity jurisdiction, codified at 28 U.S.C. § 1332, because (i) Plaintiff is a citizen of the State of New York and (ii) Defendant is a citizen of the State of New Jersey.

7. The amount of damages sought by Plaintiff in this action exceeds $75,000, the statutory threshold of 28 U.S.C. § 1332.

8. Because Plaintiff resides within the Eastern District of New York, venue is proper in this District.

## BACKGROUND FACTS

### I. Plaintiff Introduces Defendant to the Automobile Dealership Business

9. Plaintiff has had a 25-year long career in the car dealer business. He started out working as a car buyer before he purchased his first dealership in Queens in the early 2000s. He became successful and opened several automobile dealerships including at least five automobile dealerships he owned or jointly owned with Defendant and other third parties:

   a. Auto Holdings, Inc.;

   b. Garden State Nissan, Inc.;

   c. 1567 Route 23 Holdings, LLC;

      d. Luxury Motor Cars, LLC ("Luxury Motor");

      e. New Motor Ventures, LLC; and

      f. Dash Cars of CT, LLC ("Dash Cars").

10. In addition, Plaintiff purchased several pieces of real estate and invested in several real estate development projects.

11. Before meeting Plaintiff in 2020, Defendant was a "Finance and Insurance Manager" at Legend Nissan, an automobile dealership located in Long Island, New York.

12. The Defendant's defamation of Plaintiff set forth herein relates to and arises from Plaintiff's meetings with Defendant in New York. Specifically, among other meetings, Plaintiff and Defendant negotiated their partnership in a meeting with an individual named Alex Zanan at Wolfgang's steakhouse located at 54th and 3rd Avenue in Manhattan on or about September 2019.

    **a. Plaintiff Generously Gives Defendant the Opportunity to Partner with Him**

13. In 2020, Plaintiff met Defendant. Defendant had no experience owning an automobile dealership. Plaintiff shared his knowledge of the business with Defendant and introduced him to members of the industry.

14. In early 2020, Plaintiff purchased a Nissan new car dealership in Butler, New Jersey. Plaintiff invited Defendant to be a co-owner of Garden State Nissan, Inc. d/b/a Route 23 Nissan ("Garden State Nissan"), an entity Plaintiff created to purchase the dealership on March 24, 2020. Plaintiff and Defendant entered into a shareholder's agreement memorializing this purchase on June 18, 2020. Pursuant to that agreement, Plaintiff was given a 49% equity interest and Defendant owned the remaining 51%. Despite this ownership structure, Plaintiff paid $1 million of the $1.25 million purchase price for his minority share and contributed an additional $700,000 of working capital, while Defendant only paid $200,000 towards the purchase price and

contributed no working capital. Thus, Defendant was given a majority ownership interest for $200,000.

15. As the partnership grew, Plaintiff and Defendant entered arrangements to own and operate three more automobile dealerships. Plaintiff and Defendant also entered into agreements to own certain real estate parcels (typically the land where the dealerships were operating) and real estate development projects. In nearly each of these transactions, Plaintiff contributed far more money towards the transactions. In some cases, Defendant paid no capital contributions to the partnership or contributions to construction of the dealerships. In at least two instances, Defendant's inability to contribute appropriate funds to certain projects caused them to be called into default, thus jeopardizing Plaintiff's investment, and his standing in the industry as a reliable investor or purchaser.

16. In summary, Plaintiff provided Defendant with the opportunity of a lifetime – the chance to own an automobile dealership business – and in response Defendant embarked on a shocking campaign to defame Plaintiff and seek to ruin the business contacts that Plaintiff spent decades developing and cultivating.

    **b. Defendant Develops a Scheme to Oust Plaintiff from Ownership**

17. In late 2021, Plaintiff sold his managing interest in Auto Holding to a third party, Vadim Chepovetsky. While retaining a 45% interest in the company, Plaintiff no longer had an involvement in its operations. However, under applicable law, Plaintiff remained a responsible person for licensing purposes because he owned more than 10% of the dealership. Under his management, Chepovetsky engaged in actions that violated certain regulations and jeopardized Auto Holding's ability to remain a duly licensed entity in New Jersey. As a result, in September 2022, the New Jersey Motor Vehicle Commission Services Division ("NJMVC") started

4

suspension proceedings against Auto Holdings. On November 30, 2022, NJMVC suspended Auto Holding's license. Under appliable law, because of the suspension, Plaintiff lost his ability to renew his licenses for his other dealerships, which he jointly owned with Defendant. Once the suspension occurred, Defendant saw an opportunity to snatch control of the jointly owned dealerships from Plaintiff and plotted accordingly.

18. First, Defendant was emboldened to take actions that included locking Plaintiff out of the primary joint business' accounts (*i.e.*, Garden State Nissan, Luxury Motors, and Dash Cars), terminating numerous employees of Luxury Motors, and permanently closing Dash Motor.

19. Second, Defendant commenced a lawsuit in New Jersey state court seeking damages of more than $30 million from Plaintiff due to alleged losses caused by his license suspension.

20. Third, to facilitate his scheme, as demonstrated below, Defendant defamed Plaintiff in an effort to oust Plaintiff as an owner and operator of the automobile dealerships they jointly owned.

**IV.** **Defendant Defames Plaintiff**

  **a.** **Defendant Approaches Three Individuals Well-Known in the Auto Dealership Industry Accusing Plaintiff of Engaging in Felonious Conduct**

21. Acting solely out of malice, Defendant approached three individuals who are well-known in the auto dealership industry.

22. The first individual Defendant spoke to was Bruce Iannelli. Mr. Iannelli owns a wholesale automobile business called European Auto Wholesalers Ltd. and transacts millions of dollars of business a year to automobile dealership businesses such as the business jointly owned by Plaintiff and Defendant.

23. In late December 2022, Defendant approached Mr. Iannelli and told him that Plaintiff regularly accepts illegal kickbacks in connection with purchasing automobiles for his automobile dealership business, totaling thousands of dollars.

24. In that same month, Defendant approached Alex Sirota and repeated the above defamatory statement. Mr. Sirota is a high-level employee of Sunrise Chevrolet, an automobile dealership in Forest Hills, New York. Sunrise Chevrolet has a substantial business relationship with the entities jointly owned by Plaintiff and Defendant.

25. In early January 2023, Defendant approached Tamar Halim and again repeated the same defamatory statement. Mr. Halim is the owner of TSJ Auto Brokers in Central New Jersey. TSJ Auto Brokers has a substantial business relationship with the entities jointly owned by Plaintiff and Defendant.

26. The above statements made by Defendant are purported statements of fact that are false.

27. Plaintiff does not accept (nor solicit) illegal kickbacks from anyone concerning the automobile dealership business.

28. In addition, this purported assertion of fact is clearly defamatory. Defendant's statements convey that Plaintiff committed serious wrongdoing subject him to public contempt, hatred, ridicule, aversion and disgrace. In that regard, claiming that Plaintiff accepts illegal kickbacks accuses Plaintiff of committing felonious conduct under Section 180.08 of New York's Penal Law – commercial bribery.[1]

---

[1] Section 180.08 of New York Penal Law states as follows: An employee, agent or fiduciary is guilty of commercial bribe receiving in the first degree when, without the consent of his employer or principal, he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that such benefit will influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit solicited, accepted or agreed to be accepted exceeds one thousand dollars and causes economic harm to the employer or principal in an amount exceeding two hundred fifty dollars.

29. Moreover, Defendant's purported assertion of fact constitutes defamation *per se* because, as it injures Plaintiff in his trade, business and profession and imputes salacious and immoral conduct to the Plaintiff. It is obvious that the assertion that Plaintiff accepts illegal kickbacks in connection with his position in the automobile dealer business would hurt Plaintiff's reputation. Therefore, Defendant's false assertion of purported fact regarding Plaintiff constitutes defamation *per se*.[2]

### B. Allegations of Defendant's Malice

30. Defendant acted solely out of malice when he told three well-known individuals in the automobile industry that Plaintiff accepts illegal kickbacks. This is Defendant knew that his false and defamatory allegations were false when he made them.

31. Moreover, the timing of the statements demonstrates that Defendant acted solely with malice. Defendant made these statements during a time where he had a pending New Jersey state court litigation seeking to oust Plaintiff from various companies that the parties owned together. Defendant's statements were clearly made in an effort to support his litigation position as a way to gain a tactical advantage within the tight-knit automobile industry.

32. Importantly, if Defendant's plan came to fruition, Plaintiff would be a competitor of the Defendant. Thus, Defendant's malice is highlighted by his motivation to gain an unfair advantage over Plaintiff as a potential competitor in the automobile industry.

33. In sum, Defendant's defamatory statements were made with malice.

---

[2] Defendant also told these three individuals that Plaintiff is a liar and a fraud.

## FIRST CLAIM FOR RELIEF
## DEFAMATION PER SE

34. The above paragraphs are repeated and incorporated by reference as if fully set forth herein.

35. The above defamatory statements that Defendant published to third parties regarding Plaintiff are false and defamatory and not the subject of any privilege.

36. Defendant had actual knowledge that the information he published was false but then acted with malice by publishing such false information.

37. Alternatively, in knowingly publishing highly derogatory information regarding Plaintiff (who is a private figure), Defendant acted in a grossly irresponsible manner and without consideration for the standards of information gathering, and with reckless disregard of the falsity of his assertions concerning Plaintiff.

38. Defendant's false statements concerning Plaintiff constitute defamation *per se*, as they are of the type that tend to injure an individual like Plaintiff in his trade, business, and profession and impute salacious, criminal, and immoral conduct to Plaintiff.

39. Defendant made the defamatory statements regarding Plaintiff solely out of malice and with the intent to destroy Plaintiff's reputation, harm his financial situation, and obtain control over their joint businesses.

40. As a direct and proximate result of Defendant's defamation, Plaintiff has suffered damages, including, but not limited to, damage to his reputation, his business relationships, and his career. These damages include Plaintiff's lost income because of lost sales and lost future earning capacity and lost business opportunities. However, because the defamation by Defendant consists of defamation *per se*, it is not necessary for Plaintiff to plead or prove special damages.

41. But for Defendant's defamation, Plaintiff would not have suffered the damages directly and proximately caused by Defendant's defamation.

42. The injurious character of Defendant's false statements is a self-evident fact of common knowledge which need not be pleaded or proved.

43. As such, Defendant's false statements are actionable without proof of special damages.

44. Plaintiff seeks damages and punitive damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE BUSINESS RELATIONS

45. The above paragraphs are repeated and incorporated by reference as if fully set forth herein.

46. Defendant's wrongful conduct detailed above also constitutes tortious interference with prospective business relations.

47. Defendant knew of Plaintiff's business relationships with the third parties set forth above and intentionally and maliciously interfered with those relationships to foster his own business advantage to the detriment of Plaintiff's reputation and standing in the industry. Defendant is aware of Plaintiff's business relationships and prospective business relationships with others within the automobile dealership community as Plaintiff introduced Defendant to, and mentored him in, this aspect of the automobile industry.

48. Defendant acted with the sole purpose of harming Plaintiff, and used wrongful, dishonest, unfair, or improper means to injure his business relationships by virtue of Defendant's action, which included fraudulent misrepresentations regarding Plaintiff's character.

49. These fraudulent misrepresentations included Defendant's concocting false and defamatory allegations that Plaintiff engaged in criminal behavior for his own personal advantage and purposely publishing them to NJMVC. Defendant engaged in this conduct for the wrongful and malicious purpose of destroying Plaintiff's business relationships with his colleagues and customers and to perpetuate his scheme to obtain control of the jointly owner automobile dealerships.

50. Defendant's wrongful conduct constitutes tortious interference with prospective economic advantage. Plaintiff had business relations with third parties. Defendant knew of these business relations. Defendant directly contacted these third parties using wrongful means and induced them in an attempt to not to do business with Plaintiff. Defendant's wrongful means included fraudulent misrepresentations and defamation concerning Plaintiff's reputation and business relationships with his existing and prospective clients and customers. Defendant acted solely for the malicious purpose of inflicting intentional harm on Plaintiff.

51. As a direct and proximate result of Defendant' tortious interference, Plaintiff suffered damages including Plaintiff's lost income because of loss of potential sales of his dealerships, lost future earning capacity, and lost business opportunities. Each loss is a direct and proximate result of Defendant's malicious and wrongful defamation.

52. As a direct and proximate result of Defendant' defamation, Plaintiff has been damaged in an amount to be determined at trial, but Plaintiff asserts the damages exceed $15,000,000 (fifteen million dollars). Punitive damages are also sought and warranted for the outrageous and malicious nature of the wrongs committed by Defendant.

## JURY DEMAND

53. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial on the claims set forth above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant on all of Plaintiff's causes of action as follows:

    a. An award of compensatory and punitive damages in an amount to be determined at trial;

    b. A declaratory judgment that Defendant' statements regarding the Plaintiff are false;

    c. An award of attorneys' fees, costs, and expenses; and

    d. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 27, 2023

                                      **JACOBS P.C.**

                                      By: /s/ Ilevu Yakubov
                                      Ilevu Yakubov (Leo Jacobs), Esq.
                                      Adam Sherman, Esq.
                                      595 Madison Avenue
                                      39th Floor
                                      New York, New York 10022
                                      (212) 229-0476
                                      *Attorneys for Plaintiff*